**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KNECHTEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| IMPERIAL SUGAR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, KNECHTEL, INC. ("Plaintiff"), by its attorneys, George P. Apostolides and Michelle G. Novick of the firm of Arnstein & Lehr LLP, and for its COMPLAINT against Defendant, IMPERIAL SUGAR COMPANY ("Defendant"), states and alleges as follows:

## PARTIES AND JURISDICTION

1.  Plaintiff is a citizen of the state of Illinois, as its primary place of business and nerve center is located in Skokie, Illinois.

2.  Plaintiff is in the business of development, business strategy, and marketing in the confectionary and candy business.

3.  Defendant is a citizen of the state of Texas, as its primary place of business and nerve center is located in Sugarland, Texas.

4.  The Court has subject matter jurisdiction of this action under §28 U.S.C. 1332 because Plaintiff's citizenship is different from that of the Defendant, and, as alleged in further detail below, the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

5.     Venue in this district is proper under §28 U.S.C. §1391(a)(2) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this district.

**THE DEVELOPMENT AGREEMENT**

6.     On or about August 31, 2006, Plaintiff and Defendant entered into a development agreement (the "Development Agreement") in which Defendant offered to pay Plaintiff a development fee with respect to products generally referred to as compressed sugar, fondant sugar, and non-sweet sucrose. A copy of the Development Agreement is attached hereto as Exhibit A and by express reference made a part hereof.

7.     Section Two (2) of the Development Agreement states:

Development Fee. Subject to the provisions of this Agreement, Imperial shall pay to Knechtel a development fee of 12% of the gross margin on sales by Imperial of products covered by this Agreement during the period beginning January 1, 2007 and ending December 31, 2016. This development fee shall apply to the technologies and products currently identified in Appendix "A." Additional products, technologies and projects, if developed, shall be subject to independently negotiated development fees. For the purpose of this Agreement, gross margin is defined as "net selling price" minus "costs of sales", such terms being further defined as follows:

"Net Selling Price" means the gross selling price Imperial charges its customers for the products covered by this Agreement less any amounts not collected, such as discounts, allowances or bad debts; and

"Cost of Sales" means

a) if the product is manufactured at a facility not operated by Imperial (a "Co-Packer") the amount paid to Co-Packer for manufacturing the product, plus cost of all raw materials, packaging materials and any freight cost incurred in excess of freight cost billed to the customer.

b) if the product is manufactured at an Imperial operated facility, the total costs to manufacture and package the product as measured by Imperial's manufacturing cost systems, plus any freight cost incurred in excess of freight cost billed to the customer. Cost of Sales per unit pursuant to

paragraph (2) will be limited to the lower of the most recent Co-Packer manufacturing costs for such product or Imperial's internal manufacturing costs.

8.     Section Four (4) of the Development Agreement sets forth the minimum

development fee to which Knechtel is entitled under the Development Agreement.   It

states:

> Minimum Development Fee. Notwithstanding the provisions of Section 2, a minimum development fee of $350,000 will be due at the earlier of cancellation of this agreement by Imperial, or three years after signing. The minimum development fee will only be due if the cumulative development fees paid through the date of cancellation or within three years do not exceed $350,000. Imperial may cancel this agreement with no further obligation of payment to Knechtel other than the aforementioned minimum development fee of $350,000. If this minimum fee is activated, then the actual payment to Knechtel will be $350,000 less the sum of Development Costs and Development Fees paid by Imperial through that point in time. The Minimum Development Fee shall cover the products and technologies identified at this time and included in Appendix "A". All other products and technologies developed by Knechtel would be subject to additional minimum development fees as agreed upon by the parties at the time of disclosure.

9.     Section Five (5) of the Development Agreement sets forth the maximum

development fee to which Knechtel is entitled under the Development Agreement.   It

states:

> Maximum Development Fee. Notwithstanding the provisions of Section 2, the maximum development fee payable pursuant to this Agreement is $2,000,000 for the technologies and products identified in Appendix "A".

10.     Sections Thirteen (13) and Fourteen (14) of the Development Agreement

govern defaults by Imperial and Knechtel's remedies. Section 13 states:

> Default by Imperial. Any failure by Imperial to make full and timely payment of any amounts owing pursuant to this Agreement shall constitute an event of default by Imperial ("Default by Imperial") under this Agreement.

Section 14 also states:

> Remedies of Knechtel.  In the event of a Default by Imperial, Knechtel
> may exercise any and all rights and remedies at law, in equity or by statute
> permitted or provided.

11.    Section Sixteen (16) of the Development Agreement provides for

attorney's fees in the event of a default.  Specically, Section 16 states:

> Expenses.  In the event that either party hereto shall default as more fully
> set forth hereinabove, the other party shall have the right to recover, in
> addition to any and all other amounts owing, all costs and expenses,
> including without limitation, reasonable attorneys' fees, suffered or
> incurred by the said party in enforcing any of its rights or remedies under
> this Agreement or by law, equity or statute permitted or provided.

12.    Appendix A to the Development Agreement describes, in Section 2.1 and

its subsections, the product categories of (1) direct compressible sucrose sugar; (2) dry

fondant sucrose sugar; and (3) sweetness and modified texture – sucrose sugar.

## BACKGROUND FACTS

13.    Prior to the execution of the Development Agreement, Plaintiff prepared a

presentation to Defendant regarding the business opportunities which could result from

an agreement between Plaintiff and Defendant in multiple areas, including compressible

sugar, fondant sugar, and non-sweet sucrose.  After the execution of the Development

Agreement, Plaintiff commenced its work on those three product categories as set forth in

the Development Agreement (collectively referred to as the "Products").

14.    Pursuant to the Development Agreement, Plaintiff worked for Defendant

beginning in August, 2006 on a regular basis until the end of 2007, and performed some

work on a less regular basis in 2008.

15.    Plaintiff complied with its obligations pursuant to the Development

Agreement and in fact developed products which were manufactured by Defendant or

one of its chosen co-packers.

16.     Defendant has manufactured one or more of the Products developed by Plaintiff either itself or through a co-packer, Century Foods, Inc. ("Century").

17.     Further, on information and belief, Defendant and Century have sold the compressible sugar product to major manufacturers of confectionary and candy products without paying the development fee to the Plaintiff pursuant to the terms of the Development Agreement.

**COUNT I**
**(Breach of Contract)**

1-17.   Plaintiff restates and realleges the allegations in Paragraphs One (1) through Seventeen (17) above as Paragraphs One (1) through Seventeen (17) of Count I.

18.     Defendant has breached the Development Agreement by failing to pay either (1) the Minimum Development Fee of at least $253,228.57; or (2) 12% of the gross margin on sales by Imperial of the Products covered by the Development Agreement since its inception up to $2,000,000.00.

19.     As a result of Defendant's breach of the Development Agreement, Plaintiff has suffered damages in an amount to be determined between $253,228.57 and $2,000,000.00.

WHEREFORE, Plaintiff, Knechtel, Inc., requests a judgment in its favor and against Defendant in an amount to be determined at trial between $253,228.57 and $2,000,000.00, and for any additional relief this Court deems appropriate or necessary.

## COUNT II
### (Accounting)

1-19.   Plaintiff restates and realleges the allegations in Paragraphs One (1) through Nineteen (19) above as Paragraphs One (1) through Nineteen (19) of Count II.

20.   Defendant has not provided Plaintiff with an accounting of the Products which it has sold and thus the fees due to Plaintiff under the Development Agreement.  In order for Plaintiff to determine the correct amount due to Plaintiff pursuant to Paragraph Two (2) of the Development Agreement, an accounting is necessary.

WHEREFORE, Plaintiff, Knechtel, Inc., requests an Order from the Court requiring Defendant to provide an accounting of all sales and funds of the Products covered by the Development Agreement.

## COUNT III
### (Declaratory Judgment)

1-20.   Plaintiff restates and realleges the allegations in Paragraphs One (1) through Twenty (20) above as Paragraphs One (1) through Twenty (20) of Count III.

21.   Section Eight (8) of the Development Agreement states:

Assignment.  Knechtel on the earlier of December 31, 2016 or upon payment by Imperial of the maximum development fee stated in Section 5, will assign, transfer and set over to Imperial all of Knechtel's right, title and interest of any and every nature in and to any products covered by this Agreement including without limitation any and all of the rights with respect to the design thereof and the processes utilized thereby.  Upon request by Imperial, Knechtel shall execute such additional documentation as Imperial shall from time to time require concerning the said assignments set forth in this Section.  During the TERM of this agreement, Knechtel shall not assign, sell or market to any other party any of the products identified in Appendix "A" as amended from time to time and shall deal exclusively with Imperial relative to these products.

22.   Plaintiff holds the right, title, and interest in the Products covered by the Development Agreement, including all rights with respect to the design and processes

utilized.

23.     Defendant disputes that the Plaintiff has the right, title and interest in the Products.

24.     Plaintiff is entitled to a declaration that it has the right, title, and interest in the Products covered by the Development Agreement, including all rights with respect to the design and processes utilized.

WHEREFORE, Plaintiff, Knechtel, Inc., requests a declaration from the Court that it has the right, title, and interest in the products covered by the Development Agreement, including all rights with respect to the design and processes utilized, as set forth in Section Eight (8) of the Development Agreement.


                                    KNECHTEL, INC.


                                    By:___/s/ George P. Apostolides_____
                                         One of its attorneys

George P. Apostolides, Esq.  (ARDC #6228768)
Michelle G. Novick, Esq. (ARDC # 06207045)
ARNSTEIN & LEHR LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
Telephone : (312) 876-7100
Facsimile: (312) 876-0288